Thank you, again. Mr. Brown, you're ready. I am, Your Honor. Your Honor, if it pleases the Court, I'm Tom Brown. I represent Gateway Residence at Exchange, LLC. Two issues in this case, Your Honor. The first issue is whether the Code Section 38.2-226666 applies to this case. And the second is a jurisdictional issue on direct action. Now, let me take the first issue. And the first issue really breaks into two parts. First, does the statute apply in this case? And unquestionably, it does. Second part is, was it complied with by Illinois Union Insurance Company? The facts were pretty clear in this case. On 8-11-14, there was damage done to generators as a result of professional negligence of a company called Mechanical Design. Mechanical Design was insured, had a liability insurance policy with Illinois Union Insurance Company. There was a claim made against them by my client, the owner of the property, in August. Those design flaws in the generators caused them to catch on fire and they had to be relocated at a cost of $910,000. This was found by the Fairfax County Circuit Court in the trial against MDJ. On 9-5-14, the points of law in your issue are this. And I think sort of the crucial points of law are set out in a couple of cases that were cited by Judge O'Grady in his opinion. And I think he was a little bit confused over some of the facts in this case. But the two cases, I think, come out of Maryland. Maryland has a statute very similar to our statute. It's similar in that it's triggered when there is a breach of a condition, which an insured has, in this case MDJ, and when that breach is not communicated to the claimant. The cases are Sherwood Brands and I am dealing with the merits first. I can deal with jurisdiction if you want to deal with that first, Your Honor. I guess you can do it either route without that jurisdictional issue. Well, Your Honor, I can deal with the jurisdictional issue because jurisdictional issues are fairly interesting, but they're also a very important issue. And that is under 1332, in a direct action against an insurance company, the insurance company adopts the citizenship of its insured. In this case, that would create Virginia citizens on both the plaintiff and the defendant. My client is the Virginia citizen. And Illinois Union adopting its insured mechanical design would also be a Virginia citizen. It would destroy diversity. So the question is, is this a direct action? What happened in this case is my client sued mechanical design, obtained a judgment. That judgment was not paid by the insurance company. That's correct, Your Honor. And, Your Honor, there is a split of authority on this. I really don't think it is the better view. The better view I think the Sherman versus the Penny Lumberman's case, District Court of Maryland, is virtually identical to this case. Sued against an insured, obtained a judgment, and then sued the insurance company. And there they held that was a direct action. That's at 21 F sub second 543. It seems really obvious to me, looking at it, that what Congress was worried about was not this situation. The situation where we try to get around the absence of diversity by only suing the insurance company and not suing the insured at all. The insured was sued, so that's a no. Your Honor, I'll... Excuse me, Your Honor. Absolutely, Your Honor. So we're required to follow that procedure. We're required to sue first, MDG, and then the policy has to have a provision in it allowing a direct action. I would just note that the most recent case on this came out of Missouri, and it's after all the briefing was filed. Otten versus Liberty Mutual, 218 Westlaw, 38-61-340. It was in August of this year. In very similar circumstances to here, sued against an insured. They then garnished the insurance company in a second action, and they held that was a direct action. And I just note the statute, 1332, talks about direct action, but doesn't really tell us, doesn't inform us as to what that direct action means. And there's no question, this is a direct action. The Morrell case says this is a direct action. The Virginia Supreme Court has called this a direct action. It really is a direct action. I understand that, Your Honor. All I'm pointing out is the only thing that 1332 gives us is the definition. It just says in a direct action. Right. And, Your Honor, if they were a party to this action under 1332, I wouldn't have a direct action under its very terms. So, Your Honor, all I'm saying is in this case, I think there is no guidance by the Fourth Circuit on this issue. I think I have a district court out of Maryland, which is part of the Fourth Circuit, which tells us that I have a direct action. I have new cases out of Missouri telling me this would be a direct action. Of course, there are cases out of California and other states that say this wouldn't be a direct action. That's correct, Your Honor. I don't believe that the Fourth Circuit has weighed in on this. Well, Your Honor, it's not that it helped my client. What it is is the statute talks about a direct action, and it is a direct action against an insurance carrier, and it is a case in which the carrier should be. That is, they're stepping into the shoes of their own insured in this case. And that is we've sued the carrier to collect on a judgment rendered in a Virginia court against a Virginia citizen. And so, Your Honor, I think that ultimately I believe it is a direct action, and at a minimum, I think the Fourth Circuit should weigh in and tell us one way or another whether in the future it's a direct action. I would note that I file a lot of these suits, and it's one of the issues that comes up on a fairly regular basis. Your Honor, moving on to the subjective issues, once again, I think the cases of the Sherwood Brands case I was telling you about earlier, 418 Maryland 300, Maryland has a statute very similar to Virginia's statute. In Maryland, if the insurance company doesn't give notice to the claimant, they then have to show prejudice as a result of the breach of the condition or the breach of the policy. In Virginia, the legislature has been much more harsh. Bright-line test, you don't give notice, then it's a waiver as a matter of fact. I don't remember what the type of policy it is.  And, in fact, the holding of this case is we hold that the Maryland statute to claims-made policies, does not apply to claims-made policies in which the act triggering coverage, usually notice of claim or suit being filed against the insured and served upon the insured under a third-party liability policy, does not occur until after the expiration of the liability policy. It is not what happened here, Your Honor. What happened here is what happens on the other hand. The court went on to say, on the other hand, we hold that the statute does apply, as in the case at present, to claims-made policies in which the act triggering coverage occurs during the policy period. Okay? The act triggering coverage, Your Honor. Well, it is additional requirements, Your Honor. It is a condition. That is the policy. If we go to the policy. Well, Your Honor, right. But the statute says, look, if there had been a breach, and I'll read the statute. When any insurer on a policy of liability discovers a breach of the terms or conditions, the notice is a condition precedent in the policy. At page 50 of the record and page 58, both places in the policy, it says a condition precedent of this policy is to give us notice. The insured did not give notice during the policy period. But the claim was made while the policy was enforced. That's the issue here. If the claim is made after the policy terminates, clearly the statute doesn't apply. But here the claim was made in August of 2014. I'm getting dry, Your Honor. Sorry about that. Can you just explain to me why the statute doesn't apply? The claim is made outside the policy period. What's the difference between that and what happened here? Because, Your Honor, it's this. If the policy has expired and a claim arises after the policy expires. There's no coverage. There's no obligation on the insured to give notice to the insurance company. But their argument is that if it's not reported during the policy period, there's just no coverage. This isn't a defense. There's just no coverage. It's as though they never purchased an insurance policy. But it is a defense, Your Honor, under 38.2226. That is the precise type of notice that you have to give notice to the claimant of. You didn't give me notice soon enough. It comes up in various different forms. I understand. So, Your Honor, if we look at the policy, maybe we look at the policy and we look at the construct of the policy. Policy says to the insurer, if you get notice of a claim during this policy period, you have an obligation to give us notice. It's a condition preceding to your coverage. If you breach that condition. The district court, I think, held that it was a condition preceding that was not a statutory condition, as that's defined in the statute. I'm assuming you would say that the district court was in error there. I actually believe the district court was confused as to when, and if you read the transcript, the judge actually said, I'm confused as to when the actual notice was given. But the notice was given during the policy period. At that point in time, mechanical design had an obligation to give notice to Illinois Union. There was a condition in the policy found in two different places that mechanical design has a duty to give notice, and if they fail in that duty, it is a failure of a condition precedent to coverage. 38.2-2226 covers that situation. It covers cases in which an insurer on a policy of liability insurance discovers a breach of terms or conditions in that policy. We see this statute. This statute, we all know about it. Everybody who operates in this space knows about this statute, which is why I gave notice to Illinois Union three times during the course of filing suit against mechanical design, looking for a response from Illinois Union, telling me if they asserted a breach of a condition, condition precedent, notice, or a term of the policy. You didn't get notice directly from the insurance company, but you did get it from Alliant? Your Honor, Alliant gave notice. I want to tell you three things about that. What Alliant actually said, go to page 353 of the appendix. Are you arguing the notice was defective for some reason or it was not timely? Well, I'm arguing that, number one, the notice doesn't meet what the statute requires. The statute says the insurer shall notify the claimant. Right there. The insurer, Illinois Union. All right? Number one, Alliant. Notification by its agent would be insufficient. It's not its agent, Your Honor. Alliant is not the agent of Illinois Union. In fact, Illinois Union in its answer to this lawsuit denies that it is its agent. Nonetheless, wouldn't 38.2-1801A make Alliant the agent of the insurance company? It would not, Your Honor, because this is not a claim by the insured. This is a claim by my client who's not insured under the policy against Illinois Union. The statute says that the license agent should be the agent of the insured. in any controversy between the insured or his beneficiary and the insurer. So wouldn't, in this case, your client, in effect, be a beneficiary? Your Honor, I don't think that statute applies. Number one, Alliant's a broker, not an agent. I'm not even sure they're a licensed agent in Virginia. I don't think that was ever developed one way or another in the record. And number two, Illinois Union denied in their answer, which is part of the record, and I can give you, if you want, I can give you the record cite to that, they denied that Alliant was their agent. They said they're not our agent. But doesn't your brief say that they are their agent? The notice was sent to Alliant as the agent of Illinois Union? That's what I said, Your Honor, and they denied it. Well, I know, but you said it in your appellate brief to us. I understand. And now you're standing up here and saying, I'm confused, because you're standing here saying something that's inconsistent with what's written in your appellate brief. What I'm telling you is they denied it was their agent. I understand that maybe they're saying it both ways too, but can you just explain to me whether I'm supposed to listen to what you're saying now or listen to what you're saying in your brief? Your Honor, I guess what I'm saying in my brief is the way I said there were three issues. One is they said they're not their agent. Two, they're not Illinois Union. Three, I'd invite you to actually read the text of the e-mail because it doesn't talk about Illinois Union at all. And number four, Your Honor, just as important, I think, is that the note – I see my time is up. I've reserved. Here's your answer. Four, Your Honor – I'm trying to think what four was. One is they weren't the agent. Two is – oh, there's a request for admission. And we asked Illinois Union in request for admission, have you given us notice before the lawsuit? And they said no. We admit that we have not given you notice. They tried to crawl out from underneath their request for admission, but that admission, I think, is binding one way or another in this court. Okay. You've got some time on rebuttal. I do, Your Honor. Thank you. And now we'll hear from Mr. Weingartner. So was Alliant the agent of the insurance company? Sorry. Sorry, Your Honor. Your question was? Was Alliant the agent in terms of giving notice to Gateway of your client? We took the position early on in the litigation that Alliant was a brokerage. It's a wholesale brokerage house, and it was the agent of the insured, not the insurer or. After facts developed underlying the case, it became more clear to us that it was a mixed issue. There are certain brokerages that are clearly brokers. There are certain businesses that call themselves brokers that are clearly agents, and then there's a mixed broker-agent, where you're a broker for certain purposes and, therefore, the agent of the insured. So how about in this case? Is it your agent under Virginia Code Section 38.2-1801? I think in this case, Alliant was the agent of Illinois Union for the purposes of collecting premium payments and providing certain notices. With all other regards, they were acting as a broker. So how about the notice in this case? Were they your agent for that purpose? Yes. Yes, they were the agent of Illinois Union for that purpose, and even if they weren't, the law that's cited in our briefs suggests that actual notice from a broker, as opposed to an agent, is sufficient notice. Actual notice is sufficient notice. There's a number of cases that we cited for that proposition. Some of them came round about through phone calls. Some of them came round about through letters to lawyers. But the fact that the plaintiff's counsel received actual notice of the denial within 41 days, October 16, 2017, defeats the claim that we violated the notice provision. So what's your best case for actual notice sufficing in this situation? Well, here we had actual notice from Alliant, who was acting on behalf of MDG for some purposes, Illinois Union for others. What I'm really looking for is a case that says, in this type setting, the principal, for lack of a better word, here at the insurance company, did not give the required notice of breach to the claimant, but the claimant nonetheless had actual notice, and the court said actual notice is sufficient to satisfy the statutory requirement. Sure. There are a number of cases that we cited, and it will take me a moment to find those. There are several of them. Are they in your brief? Yes, sir, they are. Okay. And they go so far as to say even a phone call to the lawyer from somebody else, a third party, a broker, not an agent but a broker, is sufficient. They are definitely in the brief. They are right on point. And actual notice is actual notice. That, though, presumes that the statute itself, the notice statute itself, is even applicable. And it is not. And I can dive into that now if you prefer, or I can cover. I know there was some concern about the jurisdictional question as well. I started you on that, so you might as well go ahead and finish. All right. So plaintiff relies on 38.22226, the third party notice statute. And the cases that we cited and discussed in our briefs explained that the statute was specifically written for the situation where there would be coverage available under the policy to a third party plaintiff, but for the fact that the insured entity breached a condition, a duty condition of the policy, which therefore stripped away coverage that otherwise would have existed under the insuring language of that policy. Stated another way, the statute only applies to require notice to a third party when the insurance company actually owes coverage under the insuring language, but the insured itself commits some act which strips that coverage away. The typical cases where you see that occurring is where the insured, in this case mechanical design group, would have breached the duty to cooperate or committed a misrepresentation or committed a fraud. One of those other conditions that the insurance company relies upon to say, hey, if the insured violated conditions of the policy, you would have been covered but for these actions and therefore were denying coverage to the third party. Is it a condition or is it a covenant part of the contract that the insured promises to do in order to facilitate coverage? I'm not sure I know how to answer that question, but the cases point out the fact that the notice provision cannot be used to expand coverage that would not exist under the insuring language of the policy. The insuring language of the policy, this being a claims made and reported policy, discusses the fact that the initial act that triggers any coverage duty whatsoever is the submission of a claim by someone, either the insured or, in this case, the third party. Now, I want to correct one thing. But under your view of things, the failure to do that is not really a breach of the contract. That defines the scope of the coverage. That is a condition precedent for which coverage even initiates in the first place. This is not a duty provision of the policy. This is the plain language. It is similar to the fact of saying we will insure cases that involve fire and the claim doesn't involve fire. The coverage is not implicated unless and until someone submits a claim. Now, plaintiffs stated several times in opening argument that a claim was submitted within the policy period. There are no facts in the record to support that. And, in fact, the facts that are in the record clearly show and admittedly show that the claim from Gateway itself did not occur until 19 months after the policy had expired. September 6, 2016, 19 months after this February 1, 2015 policy had expired. That is the one and only evidence of any notice from any person about this claim. So the statement that the claim occurred within the policy period is nowhere to be found in the record. It does not exist. So the public policy reason behind these types of statutes, like the Virginia statute, is that the insurer is the party who knows whether or not there has been a breach with the insured. Whether or not you define this failure to give notice of a potential claim as a breach of a covenant or a condition or a term. And the policy reason is that a party other than the insured, the claimant here, has no way of knowing that. And that the policy reason for the burden in the statute is so that the claimant or some other third party isn't put to all the expense and difficulty of pursuing a claim that they're not going to be able to recover. So that's why they put the onus on the insurer to give that particular notice. In this case, it would look like that there would be no way for the claimant to know that the insured failed to give the notice. So from a policy standpoint, it would seem like that burden would rest with your client. Okay, I understand what you're saying. And here, the fact of the matter is that the very first that an Illinois union ever heard of a potential claim, in this case, was the plaintiff's counsel's notice of September 6, 2016. So someone has to give notice. I'm sorry. Go back. When do you say that the policy, the claims to make policy, expired under its own terms? February 1, 2015. So does that end the case as far as you're concerned? It does. And there are cases that discuss the very large differences between a more normally seen occurrence type policy and this type of policy, which, quite frankly, before this case, I had not dealt with before. This is a claims made and reported policy. And there are cases that describe why these policies have been created and why they're used, because it limits the insurance company's risk to those finite dates and unlike an occurrence policy where the insurance company is bound for months or even years after the expiration of the policy and that risk remains open, these policies are designed specifically to prevent that. Once the policy expires without a claim from somebody being submitted, it's gone. It no longer exists, and there's nothing left to be breached. Is there any grace period within the policy that would extend the notice period for some time after the policy expired? There was, and that's called an extended reporting period. There was an automatic extended reporting period that would have applied to provide 60 extra days after February 1, 2015. So because the claim was submitted 19 months, not two months after the claim, that issue wasn't relevant here. So the cases cited in the brief, including Minnesota Mutual versus Baylor & Jackson from Maryland District Court, stated specifically, unlike the occurrence policy, the insurer or his potential liability ends when the policy expires. Therefore, when the claims made policy at issue here expired, there is nothing left. The policy cannot be breached because there is no longer a policy to be breached. So in that circumstance — Was it a claims made policy or a claims made and reported policy? That was a claims made policy, and that argument becomes even more significant in a claims made and reported policy because there's an additional duty there that also was not applied to. But this goes back to my point. You asked why the insurer didn't give notice within the policy period. We did not receive any notice of the claim until 19 months after the policy period. And then we immediately provided a denial letter to the insured and to the insured's broker, Alliant, and 41 days from receipt of the claim, that denial letter was attached to this e-mail sent directly to plaintiff's counsel. Forty-one days after date of first notice of the claim, the plaintiff received actual notice that this claim has been denied by Illinois Union. So, one, the statute doesn't apply because this is not a — the coverage never existed in the first instance. The fact that a claim was not submitted until September 6, 2016, creates a non-occurrence of a condition precedent to coverage. In order for coverage to exist initially, in the first place, that claim has to be submitted within the policy period, to your point, within the policy period plus 60 days, perhaps. None of that occurred, so coverage never triggered. The act-triggering coverage, unlike an occurrence policy, where the act-triggering coverage is the claim, the act-triggering coverage in a claims-made-and-reported policy is the reporting of a claim within the policy period. That way, the insurance company can limit its risk to dates certain and close the books on that risk when no claim has been submitted within that policy period, plus extended reporting period, if it's applicable, which it's not here. There is another case, a new case, that was decided just a couple — actually, several weeks ago, I'm not sure how many, from the District Court of Maryland. It's called Mt. Hawley, H-A-W-L-E-Y, Insurance Company v. Adele Plastics, 2018, U.S. District Lexus, 175-688, from October 11, 2018. They reaffirmed the Baylor and Jackson case that I was just discussing, and they stated specifically, the requirement of the submission of a claim within the policy period is a condition precedent to coverage. And this requirement is not a mere notice provision. Rather, it defined coverage because coverage is never triggered unless and until a claim is timely filed. What's the name of that again? I'm sorry, sir? What's the name of that case again? Mt. Hawley, M-T-H-A-W-L-E-Y, Insurance Company v. Adele Plastics, 2018, U.S. District Lexus, 175-688. They stated conditions defining the coverage or scope of a policy as distinguishing those furnishing a ground for forfeiture, and this goes to Judge Diaz's point, may not be waived by the insurance company. In other words, a failure to provide notice does not waive those things which define the scope of coverage. You can't waive those. You can waive these duty provisions, these obligations that insure does that takes away the third party's right, but you can't expand coverage that doesn't exist by relying on this notice provision, which was ultimately complied with. The court in that Mt. Hawley case stated, and I'm quoting here, defenses for lack of basic coverage may not be waived, for the effect of that would be to expand the policy to create a risk not intended to be undertaken. So this statute does not apply. If it did apply, the plaintiff received actual notice within the statutory notice period of 45 days. In fact, it was 41 days. So I think the panel had a full grasp on the jurisdictional question. I'm happy to answer any questions that you may have about that. I'm eminently convinced under the case law cited in the brief that the fictional citizenship provision of 1332C1 does not apply for the exact reasons that Judge Harris mentioned in her questions to my opposing counsel. Anything further? Thank you very much. Thank you. Mr. Brown, you have a little time left in rebuttal. Why don't we start with the point opposing counsel made about that the policy had expired and a claim was not made until some period of time after the policy expired, and under the terms of the policy that was dispositive. Now, let me start by just getting the facts out. So there are two different claims being made here. The initial claim is the claim made by MDG, or excuse me, by my client, the owner of the property against MDG. That occurred during the policy period. There's no question about that. And Your Honor can find that at page 301 and 300 of the record with interrogatory answers and in the final order of the Fairfax County Circuit Court at page 209 of the record. When was the first notice of claim made by anybody to the insurance company? And that's the second notice, Your Honor. So the second notice, that is the notice being made by my client, the claimant, to Illinois Union sent out on 9-2-16, September 2, 16. Received by them, they have the FedEx receipt in there, 9-6-2016. And when do you say the policy by its terms expired? Well, Your Honor, I think the policy by its terms did expire, as he stated, but the question isn't really whether the policy expires. The question is, under the statute, and this is what the legislature has told us, it's not a duty issue or anything else. When an insurer on a policy of liability insurance, which it unquestionably is, discovers a breach of the terms or conditions of the insurance contract by the insurer, the insurer shall notify the claimant, my client is the claimant. Can I ask you just a question about the language of the statute? I mean, the statute is about defenses and waiver of defenses. So don't we know already that the statute is limited to something that could be conceived of as a defense to payment rather than just a claim that there's no coverage here, period? Do you know what I'm saying? I mean, there seems like there's a lot of case law saying that on these claims made or claims made in reported policies, the failure to report, that's not a defense. That just means there's no coverage, period. It's as though there was never a policy. I would invite Your Honors really to read the Sherwood-Brands case because that's a... I know, but I guess I feel like I'm back where I was with you on jurisdiction. I know that you can point to some cases. I've read a ton of cases that go the other way. Why is your view right? I mean, it just seems to me that if this were an occurrence policy, then a failure to give notice is usually treated as a defense that can be waived. But when it's a claims made and reported policy, a lot of courts have explained at great length, that is not a defense anymore. That's just there's no coverage. Your Honor, I think if the original notice, the notice from my client, MDG, was made outside the policy, period, that is the triggering notice, that would be the case, Your Honor. That is the policy's already expired. The occurrence didn't happen during the policy, period. And that would really matter in an occurrence policy, but why does it matter here? Because, Your Honor, the language that the legislature has given us, I think, is pretty clear. It talks about a breach of the terms or conditions. I then go to the policy. When we go to page 50 of the appendix, we get to the policy. In the very first, the insuring agreement, it says it is a condition, precedent, to coverage under the policy that, one, the claim first be made against the insured and reported by the insured to the insurer within the policy, period. It's a condition of the policy. It's a condition precedent which can be waived. And we've cited the case in Virginia that says, look, these conditions and notice provisions can be waived by the insurer. And the insurer, they're inserted for the benefit of the insurer, and they can be waived by the insurer. And Judge Grimm is the one who decided the second case, Your Honor, who's a very careful judge, very careful jurist, does, I think, a wonderful job on the James River insurance versus the second. You said a second case? Right. So the two cases that we cited, Your Honor, which we think are applicable on this issue, claims made and reporting policies, the one is Sherwood Brands, and that was decided by the Maryland Court of Appeals. The second was cited, and by the way, these cases were cited by Judge O'Grady in his opinion. The second is James River Insurance Company versus Brickhouse Title, and that's a decision by Judge Grimm. And what he says there, that the statute, same statute as ours, applies to policies in which the act-triggering coverage occurs during the policy period, and that is my client gives notice to MDG within the policy period. That's the act-triggering coverage. But the insurer does not strictly comply with the policy's notice provisions. The MDG did not strictly comply with the policy notice conditions. And, Your Honor, before ---- Is that a claims made and reported policy? It was, Your Honor. Both of those cases were claims made and reported policies, and they go through the history of them, and they talk about those. And I just, Your Honor, I do want to just take real quick, if we go to the actual e-mail where everybody says you got direct notice of this. Where are you looking? I just said that we're on the same page. 353, Your Honor, page 353 is the e-mail that theoretically gives us this notice out there. Number one, it's not by Illinois Union that the policy requires. And what it says is this. This is an e-mail to myself, and it says, I sent this claim out to as many liability policies as I could find for any possible coverage that would apply. To date, I have received two attached details from Hartford and from Ace slash Chubb. I am waiting for coverage opinions from Peerless, Liberty Mutual, Travelers, and it goes on. Nothing in here about Illinois Union. There is nothing about Illinois Union in here. And, in fact, Your Honor, I guess the length, the leap of faith that you have to get is that. Did Ace Chubb take over Illinois Union? Well, Your Honor, I think that's what Ace Chubb, that's what they ultimately say. But there's nothing giving us notice from Illinois Union. In the statute, Your Honor, that I have a duty, and I'm looking at this statute, I'm representing my client. The statute says look for a notice from the insurance carrier. Look for a notice from Illinois Union. We sent notices to Illinois Union. We got nothing back from Illinois Union. And it's a pretty easy statute to comply with. All they had to do was send a notice out saying they breached this notice provision. So, Your Honors, in sum, I would just ask the court to once again go back and look at the James River insurance case versus Brickhouse title cited by us on page 31 of our brief, and that's Judge Grimm's decision and the Sherwood-Brands decision, both of which deal with claims made in reporting policies and this notice provision statute. Thank you, Your Honor. Thank you very much. We'll come down to Greek Council and take a very short recess. This honorable court will take a brief recess.
judges: G. Steven Agee, Albert Diaz, Pamela A. Harris